**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM MAENNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 06-22J |
| | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) | JUDGE GIBSON |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 12-13, 16-17). This Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will reverse the decision of the Commissioner of Social Security in this case, and remand the case for further proceedings consistent with this opinion.[1]

William A. Maenner ("Plaintiff") protectively filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on July 30, 2003, alleging disability as of August 30, 2002, due to a slipped disc, thinning of the spinal cord, diabetes mellitus, anxiety, depression, a heart murmur with a ventricular septal defect, and a stroke.

[1] The fourth sentence of 42 U.S.C. § 405(g) provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

R. p. 16. The claims were initially denied on April 2, 2004, prompting the Plaintiff to file a timely request for a hearing on May 10, 2004. *Id.* A hearing was held in Altoona, Pennsylvania, on January 13, 2005, before Administrative Law Judge John J. Mulrooney II ("ALJ"). R. p. 34. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 38-65. Mark Heckman, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 66-70.

The ALJ issued a decision which was unfavorable to the Plaintiff on February 10, 2005. R. p. 32. The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case.[2] R. pp. 6-9. The Plaintiff filed a complaint in this matter on February 9, 2006. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on May 18, 2006. Document No. 10. The Plaintiff and the Commissioner filed cross-motions for summary judgment on June 9, 2006, and August 7, 2006, respectively. Document Nos. 12 & 16.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In

---

[2] Due to a legibility problem, the Court cannot determine the precise date of the Appeals Council's denial of the Plaintiff's request for review. R. p. 6. Nevertheless, it appears that the denial occurred during the month of December, 2005.

discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is

> not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date. R. p. 31. Moving on to the second step of the sequential evaluation process, the ALJ found the Plaintiff to be suffering from obesity, diabetes mellitus, a history of transient ischemic attacks, obstructive sleep apnea, bilateral peripheral edema, membranous ventricular septal defect with murmur, congestive heart failure, a history of strep veridans bacteremia with endocarditis, status post lumbar hernilaminectomy secondary to lumbar disc disease and herniated nucleus pulposes, depression, personality disorder (not otherwise specified), anxiety disorder (not otherwise specified) and panic disorder. *Id.* These impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). *Id.* Nevertheless, these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant has retained the residual functional capacity to perform sedentary work with no more than occasional push/pull motions with the lower extremities (including the operation of pedals), which avoids balancing, kneeling, crouching, crawling, and climbing ropes[,] ladders, or scaffolds and does not require exposure to dangerous

> machinery or unprotected heights, and which requires no more than occasional interaction with supervisors, coworkers or the general public and only simple, repetitive, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.

*Id.* At the fourth step of the process, the ALJ concluded that the Plaintiff was unable to perform his past relevant work as a truck driver or convenience store manager. R. p. 29.

On the date of the ALJ's decision, the Plaintiff was thirty-six years of age, which made him a younger person between the ages of eighteen and forty-four under 20 C.F.R. §§ 404.1563(c) and 416.963(c). *Id.* He had a high school education and no transferable skills from any past relevant work experience. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that the Plaintiff could work as a product inspector, a hand assembler, an ampoule sealer, or a final assembler. R. p. 32. Mr. Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 67-69.

In support of his motion for summary judgment, the Plaintiff argues that the ALJ failed to give adequate weight to the opinions of his treating physicians. Document No. 13 pp. 6-22. The law governing an ALJ's treatment of the opinion of a treating physician has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 Fed. Reg. 34490, 34491. The ALJ must accord great

weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 Fed. Reg. 34490, 34492.

The dispute between the parties concerns the weight given to the opinions of the Plaintiff's treating physicians with respect to the Plaintiff's ability to engage in various work-related activities. The position taken by the Plaintiff indicates that he considers the relevant opinions of his treating physicians to be "medical opinions" for purposes of 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). Document No. 13 pp. 6-18. The Commissioner points out that "no special weight is afforded to a treating source opinion on issues reserved to the Commissioner, including the issue of a claimant's residual functional capacity, and the ultimate issue of whether a claimant is 'disabled' within the meaning of the [Social Security] Act." Document No. 17 p. 11. Before proceeding to evaluate the particular facts at issue in this case, the Court must construe the applicable regulations in order to define the parameters for the case-specific inquiry.

The legal disagreement in this case concerns the interplay between two subsets of 20 C.F.R. §§ 404.1527 and 416.927 which, at first glance, appear to be in direct conflict with each other. The Plaintiff purports to rely on 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), which state that "[m]edical opinions are statements from physicians and psychologists or other acceptable sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." The Commissioner relies on 20 C.F.R. §§ 404.1527(e)(3) and 416.927(e)(3), which state that the Social Security Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (e)(1) and (e)(2)" of those sections. The issues reserved to the Commissioner include the ultimate question of a claimant's disability, the question of whether the claimant's impairments meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the determination of the claimant's residual functional capacity, and the application of vocational factors in the claimant's case. 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2). The term "residual functional capacity" is defined as "the most that [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

An obvious tension exists between the definition of a "medical opinion," which includes what a claimant "can still do despite [his or her] impairment(s)," and the reservation of the residual functional capacity determination to the Commissioner. 20 C.F.R. §§ 404.1527(a)(2), (e)(2), 416.927(a)(2), (e)(2). In *Schwartz v. Halter*, 134 F.Supp.2d 640 (E.D.Pa. 2001), the U.S. District Court for the Eastern District of Pennsylvania construed the definition of a "medical opinion" to be broad enough to

encompass a physician's residual functional capacity assessment of a claimant. *Schwartz*, 134 F.Supp.2d at 650. The District Court reasoned that since the physician's statements "were not a conclusion as to the ultimate question of the claimant's disability, but rather an assessment of his abilities and limitations, the statements [were to be considered as] medical opinions." *Id.* at 650.

This Court is unpersuaded by the reasoning in *Schwartz* for two reasons. First of all, such a broad construction of the "medical opinion" definition blurs the distinction between *impairments* and *limitations*. While a "medical opinion" accounts for what a claimant can or cannot do despite his or her *impairments*, a claimant's "residual functional capacity" is based on the most that a claimant can do despite his or her *limitations*. 20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2), 416.945(a)(1); *Oderbert v. Commissioner of Social Security*, 413 F.Supp.2d 800, 803 (E.D.Tex. 2005). Impairments result in limitations, which is why the Commissioner considers all of the claimant's impairments in making a residual functional capacity assessment. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The distinction between *impairments* and *limitations* is clearly expressed in the regulations and, accordingly, must be observed in this case.

The second reason for rejecting an overinclusive construction of the "medical opinion" definition is the need for adherence to an important rule of statutory construction. In *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), the U.S. Supreme Court explained that constructions which render any word or phrase "superfluous, void, or insignificant" are highly disfavored. *Duncan*, 533 U.S. at 174, 121 S.Ct. at 2125, 150 L.Ed.2d at 259 (citations omitted). This Court has a duty "to give effect, if possible, to every clause and word of a statute." *Id.* Since the regulations promulgated by the Commissioner have been enacted pursuant to an express delegation of

rulemaking authority from Congress, the Court is convinced that they should be construed in a way which recognizes the significance of every word, phrase, or clause. 42 U.S.C. § 405(a).

The construction adopted by the District Court in *Schwartz* renders meaningless the words "residual functional capacity" as they appear in 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). The regulations clearly state that opinions on issues such as a claimant's residual functional capacity "are not medical opinions," and that no "special significance" is to be given to the sources of opinions on such issues. 20 C.F.R. §§ 404.1527(e), (e)(3), 416.927(e), (e)(3). By construing the "medical opinion" definition to account for specific limitations resulting from medically determinable impairments while excluding a claimant's overall residual functional capacity, this Court gives full effect to that definition without eviscerating the language which expressly places the determination of a claimant's residual functional capacity outside of the "medical opinion" category.

The Court's determination with respect to this issue is in conformity with Social Security Ruling 96-5p.[3] That ruling makes it clear that a residual functional capacity assessment is "based upon consideration of all relevant evidence in the case record, including medical evidence and nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." 61 Fed. Reg. 34471, 34474. This description of the residual functional capacity assessment clarifies that it is based

[3] Social Security Rulings are binding on all components of the Social Security Administration. *Allen v. Barnhart*, 417 F.3d 396, 402, n. 3 (3d Cir. 2005). Although such rulings do not have the force and effect of the Social Security Act or the regulations promulgated thereunder, they are to be relied upon as precedents in resolving cases involving similar facts. *Id.* A Social Security Ruling may be superseded, modified, or revoked by subsequent legislation, regulations, court decisions, or rulings. *Id.*

on both medical and *nonmedical* evidence, thereby precluding a determination that the overall assessment itself is a *medical* assessment. Furthermore, this construction of the regulations is consistent with the language in the applicable precedents. As the U.S. Court of Appeals for the Third Circuit explained in *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), "[l]imitations that are medically supported and otherwise uncontroverted in the record" must be factored into the claimant's residual functional capacity. *Rutherford*, 399 F.3d at 554. Consequently, it is apparent that a medical source's opinion as to whether an impairment results in a given functional limitation is a "medical opinion" for purposes of 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). In contrast, an opinion as to whether the cumulative effect of a claimant's limitations preclude him or her from engaging in a particular kind of work is *not* a "medical opinion," regardless of its source.

A claimant's residual functional capacity must be assessed on a function-by-function basis. *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505-508 (D.N.J. 2005); *Santiago v. Barnhart*, 367 F.Supp.2d 728, 732-734 (E.D.Pa. 2005). Although the assessment involves an examination of each particular limitation, the end result must reflect all relevant limitations of a claimant in combination. For this reason, a specific job which is not precluded by either of two limitations in isolation may nevertheless be precluded by a combination of the two. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). An ALJ may reject proposed limitations that are not supported by the record. *Rutherford*, 399 F.3d at 554. Such a determination, however, is a factual finding within the meaning of 42 U.S.C. § 405(g). Therefore, an ALJ's decision to reject a limitation alleged by a claimant can be set aside if it is not "supported by substantial evidence." 42 U.S.C. § 405(g). It is to that inquiry that the Court now turns.

On September 9, 2003, Dr. Narayan Nayak assessed the Plaintiff's ability to work for the

Department of Public Welfare. R. p. 216. He concluded that the Plaintiff was temporarily disabled (for a period of twelve months or more) due to lumbar disc disease. *Id.* This assessment was based on a physical examination. *Id.* Shortly thereafter, on October 31, 2003, Dr. Brian Ernstoff filled out a "Person with Disability Parking Placard Application" certifying that the Plaintiff had an eligible impairment that would last for a minimum of six months. R. p. 257.

The Plaintiff's physical therapist, Patrick Bragdon, opined on April 13, 2004, that the Plaintiff could not return to his previous work because of pain caused by increased activity. R. p. 394. Mr. Bragdon reported that while the Plaintiff experienced short-term relief following treatment sessions, there was "little carry over to the next day in pain relief or increased functional ability." *Id.* According to Mr. Bragdon, the Plaintiff was able to ambulate up to five miles per day as a part of a home treadmill ambulation program, and that he was able to perform a light upper-body circuit workout at the gym without exacerbating his symptoms, assuming that he kept his back stabilized. *Id.* Apparently, Mr. Bragdon was awaiting approval from the Plaintiff's surgeon to initiate "abdominal strengthening/lumbar stabilization/LE strengthening." *Id.*

On November 23, 2004, Dr. Henry Shoenthal completed a Medical Source Statement describing his opinion as to what job-related functions the Plaintiff was able to perform. R. pp. 384-385. Dr. Shoenthal opined that the Plaintiff could "never" lift an object of any weight, even if the object weighed less than ten pounds. R. p. 384. He further indicated that the Plaintiff could stand or walk for less than two hours in an eight-hour workday, and that he could sit for less than six hours in an eight-hour workday. *Id.* Dr. Shoenthal reported that the Plaintiff experienced fatigue, that his pain was severe, that he required rest periods throughout the day, and that he needed to elevate his legs frequently

throughout the course of an eight-hour workday. *Id.* According to Dr. Shoenthal, the Plaintiff could "never" engage in climbing, balancing, stooping, kneeling, crouching, or crawling. *Id.* Had they been accepted by the ALJ, these proposed exertional limitations may have led to a finding that the Plaintiff was wholly incapable of substantial gainful activity. In a letter written by Dr. Shoenthal on that same day, he stated that the Plaintiff was totally disabled from a severe back ache, and that he required continuous oxygen because of "severe shortness of breath." R. p. 382.

The record also contains evidence of the Plaintiff's nonexertional limitations. On March 10, 2004, Dr. Edward Lipski indicated that the Plaintiff was temporarily disabled (for a period of twelve months or more) due to a primary diagnosis of an anxiety disorder and a secondary diagnosis of a character disorder. R. p. 372. This assessment was based on a psychiatric evaluation, a review of the relevant medical records, and the Plaintiff's clinical history. *Id.* The ALJ's residual functional capacity assessment, to some extent, accounted for these nonexertional limitations, albeit not to the extent recommended by Dr. Lipski.

In rejecting the conclusions of these treating and examining physicians, the ALJ relied on the opinion of a state agency medical consultant.[4] R. p. 29. On February 23, 2004, the medical consultant opined that the Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for at least two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. R. p. 259. The consultant also indicated that the Plaintiff's pushing and pulling abilities were unlimited, and that he had no manipulative, visual, or communicative limitations.

---

[4] Due to legibility problems, the Court cannot determine the identity of this medical consultant.

*Id.* pp. 261-262. With respect to postural and environmental limitations, the consultant reported that the Plaintiff could engage in only occasional balancing, and that he needed to avoid concentrated exposure to hazards such as machinery and heights. *Id.* pp. 260, 262.

The state agency medical consultant acknowledged that the record contained opinions of treating and examining physicians who did not share the consultant's view. R. p. 264. The only explanation provided by the consultant for the disagreement between the opinions was the following phrase: "opinion reserved for Commissioner." *Id.* As noted earlier, however, a physician's opinion as to whether a given *impairment* results in a functional *limitation* is a "medical opinion" within the meaning of 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). Consequently, Dr. Shoenthal's Medical Source Statement, which expressed his opinion as to the ability of the Plaintiff to perform certain exertional tasks, did *not* involve matters for which no "special significance" was to be given to the relevant medical source. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3).

The ALJ articulated various reasons for rejecting the opinions of the Plaintiff's treating and examining physicians. He rejected Dr. Nayak's opinion on the ground that the disability criteria for the Department of Public Welfare differed from the disability criteria for the Social Security Administration. R. p. 26. He afforded Dr. Enstoff's opinion "no weight" because "the rules and issues that a medical professional considers in making the determination of whether an individual's impairments render him eligible for a 'Person with Disability Parking Placard' are different from those considered for Social Security Disability purposes." *Id.* He discounted Dr. Lipski's opinion because it, like Dr. Nayak's opinion, was prepared for the Department of Public Welfare. R. pp. 26-27. Finally, he declined to give Dr. Shoenthal's opinion "controlling weight" because it was "inconsistent with the

evidence as a whole." R. p. 27.

The Court acknowledges that "a statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). It is also true that the term "disability" can have more than one meaning, and that a finding of disability in one context may not necessarily warrant a finding of disability in another context. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797-807, 119 S.Ct. 1597, 1599-1604, 143 L.Ed.2d 966, 971-977 (1999); *Tylwalk v. Prudential Insurance Co.*, 2006 U.S. Dist. LEXIS 70513, at 25-30 (W.D.Pa.). Nevertheless, the ALJ must adequately consider all of the medical findings supporting a treating physician's opinion that a claimant is disabled. *Morales*, 225 F.3d at 317. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* With respect to the different standards governing different kinds of "disability" determinations, 20 C.F.R. §§ 404.1512(b)(5) and 416.912(b)(5) recognize decisions by other governmental and nongovernmental agencies regarding a claimant's "disability" status as "evidence" for purposes of Social Security Act determinations. The Commissioner recently gave notice of Social Security Ruling 06-03p, which clarifies that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."[5] 71 Fed. Reg.

---

[5] Social Security Ruling 06-03p was issued on August 9, 2006, which was subsequent to the issuance of the ALJ's decision in this case. The parties' briefs were both filed before the issuance of Social Security Ruling 06-03p, so the ruling is not addressed in the briefs. Document Nos. 13 & 17. Nonetheless, it provides significant guidance with respect to the issues in the present case.

45593, 45596. The different "disability" standards, of course, must be taken into account, and a determination of disability by another agency certainly does not bind the Commissioner. In the instant case, however, the ALJ discounted the opinions of the Plaintiff's treating physicians merely because those opinions were rendered with a different disability standard in mind. R. pp. 25-26. It is difficult to ascertain whether the ALJ considered how these opinions directly related to the disability criteria applicable under the Social Security Act, or whether he simply rejected the opinions because they were not expressed with the Social Security Act in mind.

The Plaintiff calls the Court's attention to a perceived inconsistency in the ALJ's treatment of the opinion of Dr. James Cunningham. Document No. 13 pp. 14, 22. On October 29, 2003, Dr. Cunningham opined that the Plaintiff's anxiety and personality disorders were not severe. R. p. 243. The Plaintiff argues that Dr. Cunningham's report was the only medical report which contradicted that of Dr. Lipski, and that even the ALJ did not accept Dr. Cunningham's conclusion that the Plaintiff's mental impairments were not severe. Document No. 13 p. 22. Although the Court is troubled by the lack of evidence supporting the ALJ's conclusion, the perceived inconsistency noted by the Plaintiff is not particularly significant. It is not surprising that an opinion recommending a determination against the Plaintiff at the second step of the sequential evaluation process was not accepted by the ALJ. As the U.S. Court of Appeals for the Third Circuit explained in *McCrea v. Commissioner of Social Security*, 370 F.3d 357 (3d Cir. 2004), "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea*, 370 F.3d at 360 (emphasis and brackets in original), quoting *McDonald v. Secretary of Health and Human Res.*, 795 F.2d 1118, 1123 (1st Cir. 1986). A denial at step two "is certain to raise a judicial eyebrow." *McCrea*, 370 F.3d at 361. For this reason, an ALJ is

certainly not required to dismiss the opinion of a medical source for purposes of the step-five inquiry solely because he chooses to reject a recommended determination at step two that would be adverse to the claimant.

The ALJ's rejection of the opinions expressed by the Plaintiff's treating physicians is questionable in light of the ALJ's extensive reliance on the Plaintiff's activities of daily living. Before addressing this issue in greater detail, it is worth noting the language of the applicable regulations:

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). A claimant's activities of daily living are clearly recognized as a factor for purposes of a disability determination under the Social Security Act. Nevertheless, the governing law recognizes that the value of evidence of a claimant's sporadic and transitory activities is minimal, particularly when it is contradicted by competent medical evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 40, n. 5 (3d Cir. 2001)("Furthermore, Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity.");

*Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)("What we are left with is a rejection of medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church. That is not permissible."); *Swope v. Barnhart*, 436 F.3d 1023, 1026, n. 4 (8th Cir. 2006)("In numerous cases we have noted that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.")(internal quotation marks omitted), quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995).

In the instant case, the ALJ appears to have been greatly influenced by the Plaintiff's ability to be active in his church, mow the grass, take occasional trips, and walk on a treadmill. R. pp. 27-28. The Plaintiff makes two points about these activities. First, he argues that the activities were plainly sporadic, and that they were not indicative of his ability to engage in substantial gainful activity. Document No. 13 p. 18. Second, he contends that his treadmill workouts were a part of his physical therapy regimen. *Id.* Mr Bragdon's letter supports the Plaintiff's assertion that some of the activities relied upon by the ALJ as evidence of his ability to work were actually part of his course of treatment:

> William experiences short term relief following treatment sessions. However, there is little carry over to the next day in pain relief or increased functional ability. He continues to perform a home treadmill ambulation program during which he ambulates up to 5 miles. He has initiated gentle lower extremity stretching as per surgeon protocol and patient has tolerated these stretches well. We are awaiting approval from surgeon to initiate abdominal strengthening/lumbar stabilization/LE strengthening.
>
> Bill continues to demonstrate increased pain with increased activity which is limiting his functional ability/endurance. He does report that he is able to perform light upper body circuit work out at gym without exacerbating his symptoms if he keeps his back stabilized. It does not appear that he would be able to return to his previous work at this

time secondary to his increased pain with activity.

R. p. 394. The language contained in this letter strongly suggests that the Plaintiff's workouts, which were cited by the ALJ as evidence of the Plaintiff's ability to perform work-related tasks, were *not* indicative of his functional abilities. While the applicable regulations recognize a claimant's activities of daily living as a relevant factor for consideration, they also recognize a claimant's *treatment* record as an important factor. 20 C.F.R. §§ 404.1529(c)(3)(i), (v), 416.929(c)(3)(i), (v). Mr. Bragdon's letter suggests that the Plaintiff's treadmill workouts consisted of the latter rather than the former.

Given the consistent opinions of the Plaintiff's treating physicians that he was disabled, especially Dr. Shoenthal's function-specific Medical Source Statement, the Court cannot conclude that the Commissioner's decision is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g). While the ALJ adequately explained why he did not agree with the opinions of the treating and examining physicians, he failed to identify any significant medical evidence which contradicts those opinions. An ALJ cannot disregard competent medical opinions based solely on his own amorphous impressions. *Morales*, 225 F.3d at 318.

The Plaintiff contends that Mr. Heckman's testimony was insufficient to meet the Commissioner's burden at the fifth step of the sequential evaluation process. Document No. 13 pp. 19-21. Since the ALJ's residual functional capacity assessment is not supported by substantial evidence, the Court must agree with the Plaintiff. On remand, the Commissioner will have to reevaluate the Plaintiff's residual functional capacity. The ultimate residual functional capacity determination must account for all of the limitations supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276

(3d Cir. 1987). If the Commissioner chooses to rely on the testimony of a vocational expert, all of the Plaintiff's limitations must be accurately conveyed to the vocational expert within the context of a hypothetical question. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Nonetheless, not every limitation *alleged* by the Plaintiff must be factored into the residual functional capacity assessment or included within the hypothetical question. *Rutherford*, 399 F.3d at 554. Instead, only those limitations which are credibly established must be accounted for. *Id.* In evaluating the relevant medical evidence, the Commissioner cannot reject the treating physician's assessment only on the basis of the ALJ's "own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317.

Accordingly, the Court must grant the Plaintiff's Motion for Summary Judgment (Document No. 12) to the extent that it seeks a remand, deny the Plaintiff's Motion for Summary Judgment (Document No. 12) to the extent that it seeks an award of benefits, and deny the Commissioner's Motion for Summary Judgment (Document No. 16). The decision of the Commissioner is reversed, and the case is remanded for further administrative proceedings consistent with this opinion. An appropriate order follows.

**AND NOW**, this 13th day of February, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 12) is DENIED to the extent that it seeks an award of benefits and GRANTED to the extent that it seeks a reversal of the decision of the Defendant, and a remand for further administrative proceedings; and 2) the Defendant's Motion for Summary Judgment (Document No. 16) is DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc: Karl E. Osterhout, Esq.
John J. Valkovci, Jr., AUSA